## Pierontoni *v.* Barber, Appellant.

Argued November 28, 1955. Before STERN, C. J., JONES, BELL, MUSMANNO and ARNOLD, JJ.

*Philip Price,* with him *F. Hastings Griffin, Jr., Robert J. Doran, Reynolds, Reynolds & Doran* and *Barnes, Dechert, Price, Myers & Rhoads,* for appellant.

*Henry Thalenfeld,* with him *Harold R. Wruble,* for appellees.

58

Opinion by Mr. Justice Musmanno, January 11, 1956:

The facts in this case narrate a harrowing tale. Joseph A. Pierontoni, twelve years of age, while crossing a highway on a bicycle, was struck by an automobile travelling at a high rate of speed. The ornament on the hood of the car plunged deeply into the boy's back. Thus impaled the lad was carried 60 feet when, as the car finally stopped, he was thrown forward 7 to 10 feet from his demolished bicycle into the road. It is unnecessary to relate the nature of his dreadful injuries. It is enough to say that they were of such a character that he will remain a hopeless, immobile cripple for the remainder of his days. The jury awarded $75,000 to him and $10,000 to his parents. The defendant makes no complaint with regard to these amounts, tacitly admitting they are not excessive.

The appeal here is directed to the questions of negligence and contributory negligence. The appellant contends that the accident could not happen the way it was described by the plaintiff witnesses, and, if it did, the facts convict the minor plaintiff of contributory negligence. But as we read the record, there is nothing in the plaintiff's case which challenges credulity or overwhelms belief. If there is any feature of the case which might seem to be incredible, it is that the boy escaped with his life.

Employed as a caddy at the Fox Hill Country Club, Joseph Pierontoni travelled from his home on a bicycle over a well-worn pathway which cut through the Exeter Colliery grounds, emerged on to Packard Street, and, on the other side of the street, continued its journey to the golf course at a point close to the fourteenth green. Although denominated a "Street," the thoroughfare on which the accident occurred is really a

country road, black-topped, and only 14 feet 2 inches wide.

On the day of the tragic occurrence, Alfred P. Sassaman, employed as a mechanic by the defendant Michael Barber, was testing for his employer a Ford automobile on which he had made repairs. After travelling over several highways he came to Packard Street and started down a long descent which traversed the intersecting path already mentioned, at a speed of from 60 to 65 miles per hour. Just a few moments before, the minor plaintiff had arrived on the path at a point 3 feet from Packard Street, where he stopped and looked to the right and left, seeing nothing on the highway. Mounting his vehicle again he advanced to the paved portion of the road and now saw the defendant's car 750 feet away at the crest of the hill. Assuring himself that he could easily gain the other side before the car could cover the intervening distance, he began to pedal across. When he reached the center of the road the automobile descended upon him like a thunderbolt.

Since Packard Street is only 14 feet wide and the collision occurred at the center of it, it follows that Joseph had moved only 7 feet into the road before the catastrophe. The appellant claims that it was impossible for him to have travelled 750 feet while Joseph moved only 7 feet. Appellant's counsel therefore, argues for judgment n.o.v. on the incontrovertible physical facts rule. That rule, however, can have no application here.* Where the event under discussion is not blueprinted from lines drawn with the transit and measuring tape of mathematical exactitude, but is re-

---

* "It is a well-settled rule in Pennsylvania that incontrovertible physical facts cannot be established by oral evidence as to the position, movement or speed of moving objects." *McGavern v. Pittsburgh Rwys. Co.,* 378 Pa. 13, 16.

produced more in the nature of a moving picture which is being projected through oral testimony as to speed, changing positions, and estimates, it is for the jury, and not the Court, to decide whether the final portrayal answers the demands of realizable truth.

So flagrantly derelict and reckless was the defendant's driver in the operation of the speeding car under his hand, that were it not that he himself testified to what he did, one might well wonder if the narrative of his actions was not the product of imagination instead of stupefying truth. Sassaman testified that when he first saw Joseph on the road, he threw on his brakes but he also at the same time jammed his foot down on the accelerator! The tire marks burned into the road attest to the fantastic operation which called for instant stoppage and the highest speed—simultaneously. For 98 feet the wheels churned into the black top surface of the road, writing the story which the jury had no difficulty in reading and apparently less difficulty in appraising as negligence of an extraordinarily aggravated character.

The tire marks were straight and therefore showed that for the distance of 42 feet preceding the impact, the driver made no effort to swerve to avoid the bicycle in his path. Although Sassaman said he saw Joseph before him on the road, he declared that even after he had carried the lad on the hood of his car for 60 feet he did not know what he had struck. The shreds of bone and flesh adhering to the car's ornament added other grim, mute evidence as to the violence of the collision and the greatness of the speed.

The jury visited the locus in quo and could not but have been impressed by the fact that for 750 feet, on a bright summer's day, the driver had a clear, unobstructed view of the road and yet failed to detect the youthful cyclist or, having detected what was in his

direct line of vision, continued on unabatedly toward the destruction of life or limb which, at his velocity, was inevitable.

Sassaman denies he was travelling at the speed imputed to him by the witness Coolick (60 to 65 miles per hour.) Coolick testified: "Q. Where were you when you saw Defendant's car being operated? A. I was parked about one hundred and fifty feet away when I seen him going over the hill. Q. One hundred and fifty feet from where? A. From the hill, when he was going over the hill." Appellant argues that since the estimate of speed was not made at the moment of collision, the testimony should not have been admitted. The crest of the hill was, according to measurement, 750 feet from the point of impact. In the case of *Shellenberger v. Reading T. Co.,* 303 Pa. 122, 127, we said, with regard to a witness who had testified to an estimate of speed of a motor vehicle 900 feet from the place of the collision: "We think it showed a state of affairs sufficiently close to the scene of the accident as to be to some extent at least corroborative of what the plaintiff testified confronted her just before it occured, a disregard on the part of the driver of the bus of his duty to give approaching traffic its fair share of the highway and a driving around the curve at what might well be considered a high rate of speed under the circumstances."

There can be little question that Coolick was well qualified to make the estimate he gave. In perhaps what must have been a surprise answer to appellant's counsel, who was seeking to disqualify Coolick in this matter of appraisal, Coolick testified that he had worked with the chief of police in his town in operating a speed trap where he acquired a keen aptitude in gauging the speed of automobiles over a measured-out course. Coolick's testimony as to the rapid movement

of Sassaman's car was not limited to his estimate of miles-per-hour. He testified that in a "matter of seconds" after the car sped by him, he heard the "squeaking of brakes and tires" which additionally confirmed that Sassaman bore down on his victim with a velocity unleavened by the sounding of an admonitory horn or any other device to warn him of the bone-crushing approach.

Appellant's counsel points out in his brief that Coolick made contradictory statements as to his geographical location when he estimated Sassaman's speed. But any conflicts in testimony are for the jury to consider in weighing credibility and it is their province to accept or reject evidence according to the degree of its verisimilitude.

Since Joseph Pierontoni was less than 14 years of age at the time of the accident, the Court could not have declared him guilty of contributory negligence as a matter of law. Nor do we believe that the jury misjudged the evidence in concluding by their verdict, under the Judge's instructions, that Joseph was free of contributory negligence.

Appellant's counsel complains that the Court's charge was inadequate in its treatment of negligence, causation and contributory negligence. We have studied the charge, first in its entirety and then in its component parts. We are satisfied, without here repeating the analysis made, that the charge covered the issues adequately, fairly, clearly, and correctly. The case was well tried, the issues were properly presented to the fact-finding tribunal, and we see no reason to disturb the just verdict it returned.

Judgments affirmed.